**In re Roger William JEFFERY, Bankrupt.**

**PINEMONT BANK, Plaintiff,**

v.

**Roger William JEFFERY, Defendant.**

**Bankruptcy No. HB–78–329.**

United States Bankruptcy Court, S. D. Texas, Houston Division.

Jan. 24, 1980.

See also, Bkrtcy., 2 B.R. 197.

Firmin A. Hickey, Jr., Houston, Tex., for plaintiff.

Larry E. Meyer, Houston, Tex., for defendant.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge.

Pinemont Bank filed a complaint to bar the discharge of the Bankrupt under Sec-

tions 14(c)1 and 14(c)3 of the Bankruptcy Act and alternatively to determine the dischargeability of a debt from the Bankrupt to Pinemont Bank under Section 17(a)2 of the Bankruptcy Act. In brief the allegations of the Bank's theories are as follows: Under Section 14(c)1 the Bank argues the Bankrupt committed an offense under 18 U.S.C. § 152 (1979); specifically that the Bankrupt failed to schedule all his creditors and/or falsely swore to the existence of those creditors in later oral examinations. Under Section 14(c)3 the Bank argues the Bankrupt while an officer of C. J. Limited, Inc. obtained money for that entity on the basis of a purported commitment letter from Mainland Savings Association and that such document was false. Under Section 17(a)2 the Bank has various theories urged jointly or in the alternative but all of which can be characterized either as obtaining money for C. J. Limited, Inc. on the basis of the Mainland letter, or on the basis of various representations, any and all of which (the letter and the representations) were false.

To these allegations the Bankrupt although denying basically everything save the extension of credit responds in two ways. First, he urges estoppel, res judicata and laches; and second, he denies he had the requisite intent to render the commitment letter or any representations (if made and if relied on) false. The arguments of the Bankrupt as to estoppel, res judicata and laches are not without merit and had they been previously urged, might have been the basis of more summary disposition of these matters. But at this time—with the benefit of a well-prepared case well-tried by both sides—we proceed directly to the merits.

Examining the individual theories raised by the Bank, under Section 14(c)1 the Bank argues the Bankrupt failed to schedule and/or in later examinations failed to disclose various creditors, perhaps (the Bank infers) to favor certain relationships and protect his credit. Under Sections 14(c)3 and 17(a)2 the Bank's case revolves around a purported commitment letter and representations allegedly made by the Bankrupt

to James Thomas, the President of the Bank, during the negotiation of the loan, which loan, after suit and judgment, gave rise to the present obligation to the Bank. Those negotiations occurred some time prior to the approval of the loan by the Loan Committee on May 5, 1976, and probably after April 29, 1976, the date of the Mainland letter. The negotiations involved not only the President of the Bank and the Bankrupt but also Charles Johnson, President of C. J. Limited, Inc. On May 7, 1976 the Bankrupt and Mr. Johnson executed the note for C. J. Limited, Inc. and the loan proceeds were disbursed. Notwithstanding these differences in operative facts in the theories and significant differences in the elements of the three theories, the Bankrupt has focused in his presentation on that single element common to all three theories and dispositive of the case, actual intent to deceive, sometimes also described as moral turpitude or intentional wrong. See generally 1A *Collier on Bankruptcy* ¶¶ 14.26, 14.-40 and 17.16[3] (14th ed. 1979).

Discovery in the case was obviously quite complete, including at least the depositions of Messrs. Johnson, Jeffery and an employee of Mainland, as well as the apparent ability to depose the Chairman of the Board and the ex-President of Mainland. Yet with all this, the Bank produced no direct evidence of an omission of a creditor, a particular in which the contents of the Mainland letter was untrue, knowledge by the Bankrupt at the time of negotiations that the conditions precedent to the enforceability of the Mainland commitment could not or would not be met or the falsity of other representations (not directly related to the Mainland letter). Rather the Bank built its case on inferences and implications. For example, the Bank pointed out the *Mainland commitment was never funded* and then reasoned backward in time from that result, i. e., because the commitment never funded and the Bankrupt negotiated the loan at the Bank, the Bankrupt *must* have known *in advance* the commitment would not fund.

Admittedly the Bank in this case and any objecting party in general has a difficult burden, even more so since the key element—intent—is peculiarly within the knowledge of the Bankrupt and other witnesses potentially sympathetic to his interests. But to sustain the Bank, this Court must accept the circumstantial evidence and disregard direct evidence to the contrary, the testimony of both Messrs. Johnson and Jeffery that they had no such intent. Clearly the testimony of these men must be scrutinized, bearing in mind their own self-interest; yet that does not mean it must be disregarded. Likewise, accepting the Bank's circumstantial conclusions would require dismissing the strong inference of the length (some 17 pages) and detail of the Mainland letter, a document which hardly seems to have been negotiated only to facilitate bilking the Bank.

For all of these reasons, the relief sought by the Bank must be in all things denied. Counsel for the Bankrupt is directed to present a judgment in conformity with this Opinion within five days.